## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LARHONDA JONES, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>IAS LOGISTICS DFW, LLC, d/b/a PINNACLE LOGISTICS,<br><br>*Defendant*, | Case No.: 1:19-cv-02510<br><br>Judge Charles P. Kocoras<br><br>Magistrate Judge Sheila M. Finnegan |

## AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff LaRhonda Jones ("Jones" or "Plaintiff") brings this Amended Class Action Complaint and Demand for Jury Trial against Defendant IAS Logistics DFW, LLC, d/b/a Pinnacle Logistics (referred to herein as "Pinnacle" or "Defendant") to put a stop to its unlawful collection, use, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. Pinnacle is a Delaware limited liability company engaged in the business of cargo shipment and logistics. Pinnacle's principal place of business in Fort Worth, Texas. Pinnacle operates a logistics facility in Illinois.

2. When employees or temporary workers first begin their jobs with Pinnacle, they are required to scan their fingerprint in its biometric time tracking system as a means of authentication, instead of using only punch cards, key fobs or other identification cards.

3.     While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards -- which can be changed or replaced if stolen or compromised -- fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.  For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

4.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

5.     A black market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.8d9e7126b1ac.

6.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

7.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as face scans or fingerprints.

8.     Despite this law, Pinnacle disregards employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Pinnacle has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

9.     Accordingly, this Complaint seeks an order: (i) declaring that Pinnacle's conduct violates the BIPA; (ii) requiring Pinnacle to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

10.     Plaintiff LaRhonda Jones is a natural person and citizen of the State of Illinois.

11.     Pinnacle is a Delaware limited liability company with its principal place of business in Fort Worth, Texas.

**JURISDICTION**

12.     Defendant has removed this action to this Court pursuant to 28 USC 1441.

13.     Plaintiff raises with the Court the law is developing with respect to Article III standing for the claims at issue.  *Barnes v. ARYZTA, LLC*, 288 F. Supp. 3d 834 (N.D. Ill. 2017). *But see, Dixon v. Washington & Jane Smith Cmty.-Beverly*, 17 C 8033, 2018 WL 2445292, at *5 (N.D. Ill. May 31, 2018).

**FACTUAL BACKGROUND**

**I.      The Biometric Information Privacy Act.**

14.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

15.     In late 2007, a biometrics company called Pay By Touch -- which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions -- filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records --which, as unique biometric identifiers, can be linked to people's sensitive financial and personal data -- could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not

4

actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

16. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

17. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

18. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

19. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and -- most importantly here -- fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

5

20.     The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. See 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy --made available to the public -- establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

21.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II.  Pinnacle Violates the Biometric Information Privacy Act.

22.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

23.     Unfortunately, Pinnacle specifically failed to take note of the passage of the BIPA. Pinnacle continues to collect, store, and use employees' biometric data in violation of the BIPA.

24. Specifically, when employees work at Pinnacle, they are required to have their fingerprints scanned in order to enroll them in its fingerprint database.

25. Pinnacle uses an employee time tracking system that requires employees and temporary workers to use their fingerprints as a means of authentication. Unlike a traditional timeclock, employees have to use their fingerprints to "punch" in to or out of work.

26. Pinnacle failed to inform its workers of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

27. Pinnacle similarly failed to provide its workers with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. Employees who leave the company do so without any knowledge of when their biometric identifiers will be removed from Pinnacle's databases -- or if they ever will be.

28. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Pinnacle's is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Pinnacle disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

29. Ultimately, Pinnacle disregards its employees' statutorily protected privacy rights by violating the BIPA.

## FACTS SPECIFIC TO PLAINTIFF JONES

30.     Plaintiff worked for Pinnacle for approximately ten months, from January through October 2018.

31.     Starting from the very beginning of Plaintiff's employment, Pinnacle required Plaintiff to scan her fingerprints so that Pinnacle could use it as an authentication method to track time. Pinnacle subsequently stored Plaintiff's fingerprint data in its databases.

32.     Each time Plaintiff began and ended a workday, Pinnacle required a scan of Plaintiff's fingerprints.

33.     Pinnacle never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

34.     Similarly, Pinnacle never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

35.     Plaintiff never signed a written release allowing Pinnacle to collect or store fingerprints.

36.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Pinnacle's violations of the BIPA alleged herein.

37.     Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Pinnacle has caused.

## CLASS ALLEGATIONS

38.     **Class Definition:** Plaintiff Jones brings this action pursuant to 735 ILCS 5/2-801 on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Pinnacle while residing in Illinois.

8

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Pinnacle's subsidiaries, parents, successors, predecessors, and any entity in which the Pinnacle or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Pinnacle's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

39. **Numerosity:** The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Upon information and belief, Pinnacle has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least dozens of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Pinnacle's records.

40. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a.    whether Pinnacle collected, captured, or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

    b.    whether Pinnacle properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

    c.    whether Pinnacle obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

    d.    whether Pinnacle has sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

    e.    whether Pinnacle developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for

collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f.      whether Pinnacle complied with any such written policy (if one exists); and

g.      whether Pinnacle used Plaintiff and the Class' fingerprints to identify them.

41.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Pinnacle has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

42.     **Appropriateness:** This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Pinnacle's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Pinnacle's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive

supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of BIPA Section 15(a): Failure to Institute, Maintain and Adhere to**
**Publicly-Available Retention Schedule**

43.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44.     Defendant is a corporation and thus qualifies as a "private entity" under the BIPA. See 740 ILCS 14/10.

45.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Pinnacle (in the form of their fingerprints), as explained in detail in Section II. See 740 ILCS 14/10.

46.     Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. See 740 ILCS 14/10.

47.     Pinnacle violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

48.     Pinnacle violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

49.     Pinnacle violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

50.     Pinnacle violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

51.     By collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Pinnacle violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, et seq.

52.     On behalf of herself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Pinnacle to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $1,000 per violation for each of Pinnacle' violations of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Violation of BIPA Section 15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

53.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release

executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

55.     Defendant fails to comply with these BIPA mandates.

56.     Defendant is an entity registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

57.     Plaintiff is an individual who had "biometric identifiers" (in the form of fingerprints) collected by Defendants, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

58.     Plaintiff'' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA.  *See* 740 ILCS 14/10.

59.     Defendant systematically and automatically collected, used, stored, and disclosed Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

60.     Defendant did not inform Plaintiff in writing that their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated, nor did Defendant inform Plaintiff in writing of the specific purpose and length of term for which biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

61.     By collecting, storing, and using Plaintiff's' and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

62. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LaRhonda Jones, on behalf of herself and the Class, respectfully request that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Pinnacle's actions, as set out above, violate the BIPA;

C. Awarding statutory damages for each of Pinnacle's violations of the BIPA,

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Pinnacle to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

F. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H. Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demand a trial by jury for all issues so triable.

Respectfully submitted,

**LaRhonda Jones** individually and on behalf of all others similarly situated,

Dated: June 6, 2019

By: /s/David Fish _____

One of Plaintiff's Attorneys

David Fish dfish@fishlawfirm.com
Seth Matus smatus@fishlawfirm.com
Kimberly Hilton khilton@fishlawfirm.com
John Kunze jkunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400